460 S.E.2d 431

194 W.Va. 296

George VAUPEL, Elizabeth Vaupel, and Jonathan Vaupel, Plaintiffs Below, Appellants,

v.

Don A. BARR, Individually and as The Executor of the Estate of Merle Vaupel, and Janythe M. Barr, Eva J. Kittle, George Kotson, John Crouch, Norma J. Bokanovich, Howard Lambert, Cecil Stewart, Russell Francis, Jackie White and James Polley, Trustees for the Christ Calvary United Methodist Church, Guy Knapp, Jean Anderson, Roger Blake, John Ginter, Ray Pettit, Francis Riggs, Robert Straight, Diane Vandevander and Art Williams, Trustees for Simpson United Methodist Church, Defendants Below, Appellees.

No. 22646.

Supreme Court of Appeals of West Virginia.

Submitted May 3, 1995.

Decided May 18, 1995.

Joyce D. Chernenko, William E. Watson & Associates, Wellsburg, Steven T. Taylor, Berry, Kessler, Crutchfield & Taylor, Moundsville, for appellants.

Arthur M. Recht, Ray A. Byrd, Schrader, Recht, Byrd, Companion & Gurley, Wheeling, for appellees Don A. Barr, individually and as the Executor of the Estate of Merle Vaupel, and Janythe M. Barr.

John E. Artimez, Artimez Law Offices, Moundsville, for All Church Trustees.

## PER CURIAM:

The appellants and plaintiffs below, George Vaupel, Elizabeth Vaupel, and Jonathan Vaupel, the family of Merle Vaupel, deceased, filed suit seeking to set aside the Last Will and Testament of Merle Vaupel and demanding the estate of Mrs. Vaupel be distributed under the rules of intestate succession. Under the terms of the Will, the appellees and defendants below, Don A. Barr, individually and as the Executor of the Estate of Merle Vaupel, and Janythe M. Barr, his wife, received the majority of Merle Vaupel's estate.[1] The plaintiffs contend the defendant, Don A. Barr, who was Mrs. Vaupel's attorney, exerted undue influence over her. They appeal the final order of the Circuit Court of Marshall County, which granted summary judgment in favor of the defendants. The circuit court found no genuine issue of fact to be tried and "nothing in this record to prove undue influence[.]" After reviewing the record below, we agree and affirm the judgment.

---

1. The plaintiffs assert Mr. Barr acted improperly. Mrs. Barr is named as a defendant merely because she shares in the estate under the terms of the Will. For purposes of clarity, we will refer to Mr. Barr as the defendant and identify Mrs. Barr by name.

## I.

At the time of her death on November 5, 1990, Merle Vaupel was ninety-four years old. Because her eyesight had deteriorated to the point she was virtually blind, she resided at the Respite Care Wing of Reynolds Memorial Hospital. Mrs. Vaupel had a son, George Vaupel, and two grandchildren, Elizabeth Vaupel and Jonathan Vaupel, the plaintiffs below. Her family lived out of state and her contact with them was infrequent.

For many years, the defendant was Mrs. Vaupel's attorney at law. He prepared various legal documents for Mrs. Vaupel, including a real estate sales contract and her prior wills. The defendant also handled the estate of Mrs. Vaupel's husband, W. Frank Vaupel, deceased. In September of 1978, Mrs. Vaupel appointed the defendant as her attorney-in-fact. Pursuant to the power of attorney, the defendant performed many functions for Mrs. Vaupel on a weekly basis from approximately 1984 until her death. He paid her bills, supervised her investments, filed her tax returns, and arranged for her medical care and the upkeep on her home. In addition to their friendship, the defendant's wife, Janythe M. Barr, was a distant cousin of Mrs. Vaupel.

The record reflects the defendant, acting on the power of attorney, had written a check to himself for $2,500 from Mrs. Vaupel's account on April 15, 1988. On the memo portion of the check, he wrote "loan." The defendant repaid this loan, plus 8 percent interest, to Mrs. Vaupel on December 8, 1989, by check for $2,850. This transaction took place more than a year before the plaintiffs filed suit in June of 1991.

The defendant prepared two wills for Mrs. Vaupel. The first was prepared in 1977 and bequeathed her property to her husband. A second will was prepared in 1981 after her husband's death. Under the terms of that will, Mrs. Vaupel's two grandchildren would share the majority of the estate. Her son, George Vaupel, was specifically excluded because as a physician, Mrs. Vaupel stated he was "well able to provide for himself and his wife." A codicil to this will was prepared in 1985, which called for a bequest to the Simpson United Methodist Church.

In April of 1990, Mrs. Vaupel informed the defendant she wanted to include him and Mrs. Barr in her will. The defendant told her that it would be improper for him to prepare the will. He contacted a long-time family friend of Mrs. Vaupel, John K. Chase, Jr., an attorney at law, to prepare the will. The defendant simply stated he told Mr. Chase that he and his wife may be included in the will and asked him to call Mrs. Vaupel.

Mr. Chase telephoned Mrs. Vaupel and met with her at the care facility. She instructed him to prepare the will to bequeath $1,000 each to the Calvary United Methodist Church and the Simpson United Methodist Church in Moundsville.[2] She also informed Mr. Chase she wished to bequeath the remainder of her estate to Mr. and Mrs. Barr.[3] Mr. Chase stated that Mrs. Vaupel told him that Mr. and Mrs. Barr were the only people in her family who visited her and cared for her.

Mr. Chase's meeting with Mrs. Vaupel lasted approximately one-half hour. The plaintiffs are critical of the way Mr. Chase went about preparing the will because he did not inquire about the whereabouts of other family members or prior wills. Mr. Chase stated he was unaware of the size of the estate.

The will was prepared and, on May 4, 1990, Mr. Chase went to the care facility to discuss its provisions. He read the document aloud for Mrs. Vaupel and then explained it in layman's terms. After Mrs. Vaupel appeared satisfied, Mr. Chase called two people into the room—his secretary to witness the execution and an attorney who worked in his office to notarize the document. Mrs. Vaupel executed the will by signing an "X." It was Mr. Chase's opinion that Mrs. Vaupel was legally competent to make her will.

---

2. The trustees of the churches were also named in this suit to set aside the will.

3. The estate is appraised at over $200,000.

After Mrs. Vaupel's death, this action was instituted to set aside the will. The plaintiffs moved for partial summary judgment contending the defendant breached his fiduciary duty by borrowing money from Mrs. Vaupel while acting under the power of attorney. The circuit court denied this motion and held that, even assuming the defendant breached his fiduciary duty by that transaction, no damages arose to sustain an action. The circuit court found no evidence to support the claim of undue influence and granted summary judgment on behalf of the defendants. This appeal ensued.

## II.

The plaintiffs contend that material issues of fact remain in this case and, therefore, summary judgment is inappropriate. This Court reviews a circuit court's entry of summary judgment *de novo*. Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We must determine if the plaintiffs, who bear the burden of proof in this case, produced sufficient evidence below for a reasonable jury to find in their favor. Syllabus Point 4 of *Painter v. Peavy* states:

> "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove."

We articulated the burden of proof necessary in this type of action in Syllabus Point 5 of *Frye v. Norton*, 148 W.Va. 500, 135 S.E.2d 603 (1964):

> "In an action to impeach a will the burden of proving undue influence is upon the party who alleges it and mere suspicion, conjecture, possibility or guess that undue influence has been exercised is not sufficient to support a verdict which impeaches the will upon that ground."

A review of the record viewed in the light most favorable to the plaintiffs demonstrates they failed to put forth sufficient evidence on the element of undue influence to permit a reasonable trier of fact to find in their favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As we examine the factors the plaintiffs raise, it is clear they can produce no evidence of undue influence. Rather, they rely instead on suspicion and conjecture, which are insufficient to support a verdict in their favor.

The plaintiffs argue a factual question exists as to whether the defendant actively participated in procuring the will for Mrs. Vaupel. We disagree. The evidence is clear that the defendant contacted Mr. Chase because Mrs. Vaupel indicated Mr. and Mrs. Barr would be mentioned in the will. The fact that Mr. Chase could not recall whether he was paid for his services at the time he was deposed is of no consequence to our determination. Professor Forest J. Bowman, a legal ethics expert, indicates in his deposition the defendant should not have directly contacted Mr. Chase and it would have been more appropriate for Mrs. Vaupel to choose the attorney to prepare the will.[4] This Court agrees that would be a more suitable arrangement. However, the plaintiffs have produced no evidence even remotely suggesting that the defendant actively procured this document. In fact, the record reflects Mrs. Vaupel had known Mr. Chase for many years and he had much experience in these matters. The defendant did not discuss the terms of the will with him. Furthermore, the criticisms of Mr. Chase's inquiries of Mrs. Vaupel should not be imputed to the defendant. He did not draft this will and was in no way connected with its preparation or execution.

The plaintiffs contend the evidence shows the defendant had the opportunity to exert undue influence. We agree the defendant was in close contact with Mrs. Vaupel over the last years of her life as he took care of her and handled her affairs. This factor weighs in his favor, however, because it would explain why she chose to bequeath her estate to him instead of family members with

---

4. Professor Bowman, the Hale Posten Professor of Law, has taught professional legal ethics at the College of Law at West Virginia University for approximately fifteen years. In addition, he is the author of the national monthly newsletter entitled *Bowman's Ethics & Malpractice Alert*.

whom she had very limited contact. To infer that the defendant's actions were somehow calculated to exert undue influence over Mrs. Vaupel would be sheer speculation and not a reasonable inference.

■ It is further contended by the plaintiffs that the will was unnatural because it was Mrs. Vaupel's third will in less than thirteen years and the first one not drafted by the defendant. The plaintiffs outline the discrepancies in the three documents. The grandchildren, Jonathan Vaupel and Elizabeth Vaupel, go from receiving approximately one-fourth shares of the estate in the 1977 will to one-half shares under the 1981 will to nothing under the 1990 will. We do not find these facts to be determinative. Mrs. Vaupel was under no requirement to bequeath her property to the plaintiffs or any relative. As we stated in Syllabus Point 7 of *Frye v. Norton, supra,* her mental capacity to make a will at the time she executed it is the central issue in this case:

> " ' "Where legal capacity is shown, and the testator acts freely, the validity of the will can not be impeached, however unreasonable, imprudent, or unaccountable it may seem to the jury or to others." Point 3, Syllabus, *Nicholas v. Kershner,* 20 W.Va. 251 [ (1882) ].' Point 12, Syllabus, *Ritz v. Kingdon,* 139 W.Va. 189[, 79 S.E.2d 123 (1953), *overruled· on other grounds, State v. Bragg,* 140 W.Va. 585, 87 S.E.2d 689 (1955) ]."

■ No evidence was produced below to indicate Mrs. Vaupel lacked the necessary mental capacity to make her will. To the contrary, however, evidence was introduced that Mrs. Vaupel possessed the testamentary capacity to make a valid will. It is not surprising that a ninety-four year old woman suffered from various physical problems, including blindness and bouts with depression, but the evidence indicates she was of sound mind when she discussed her intentions with Mr. Chase and later executed the document

in the presence of him and two other persons. It may seem unreasonable to the plaintiffs that Mrs. Vaupel would not include her surviving family members in her will. However, she had the right to dispose of her property as she pleased.

### III.

■ We finally address the issue the plaintiffs deem most important to this case. They moved for summary judgment on the issue of whether the defendant violated his fiduciary duty to Mrs. Vaupel when he used his power of attorney to write a check to himself from her account in 1988. Notwithstanding the fact that he repaid the money with interest the next year, he obtained a benefit from the transaction. A presumption of fraud arises "where the fiduciary is shown to have obtained any benefit from the fiduciary relationship[.]" *Kanawha Valley Bank v. Friend,* 162 W.Va. 925, 929, 253 S.E.2d 528, 530 (1979). The burden then shifts to the fiduciary to overcome the presumption and "establish the honesty of the transaction." Syl. pt. 1, in part, *Atkinson v. Jones,* 110 W.Va. 463, 158 S.E. 650 (1931).

■ The defendant put forth sufficient evidence to establish his integrity in operating as Mrs. Vaupel's attorney-in-fact by repaying the loan with interest before her death.[5] He obtained no improper benefit and Mrs. Vaupel was not harmed by the transaction. Even if the plaintiffs' arguments on this issue were persuasive that the defendant committed a wrong, we agree with the circuit court that his actions were *injuria absque damno.* Had the record shown the defendant exhibited a history of taking advantage of his authority under the power of attorney for his gain, such evidence could lead a rational trier of fact to find he exerted undue influence over Mrs. Vaupel during her last years. However, the evidence demonstrates he handled her affairs with utmost veracity, and this isolated transaction in which Mrs. Vaupel was not harmed does not support a finding that he acted improperly or

---

5. The plaintiffs assert that W.Va.Code, 57-3-1 (1937), the "Dead Man's Statute," prohibits the defendant from testifying about the loan transaction with Mrs. Vaupel because it relates to a personal transaction he had with the deceased, which is against the interests of the next of kin. *See Board of Educ. of Elk Dist., Mineral County v.*

*Harvey,* 70 W.Va. 480, 74 S.E. 507 (1912). We agree the defendant is barred from testifying to events surrounding the transaction. However, the check repaying the loan does not fall within the prohibition of the Dead Man's Statute as it is a silent witness which speaks for itself. *Woodyard v. Sayre,* 90 W.Va. 547, 111 S.E. 313 (1922).

that she was pressured into naming Mr. and Mrs. Barr in her will.

### IV.

For the foregoing reasons, we find the circuit court was correct in granting summary judgment on behalf of the defendant because no evidence was produced to indicate that he exerted undue influence over Mrs. Vaupel or that she lacked testamentary capacity. We also find the defendant put forth sufficient evidence to demonstrate the honesty of the transaction in which he borrowed money from Mrs. Vaupel while acting as her attorney-in-fact. Accordingly, we affirm the circuit court's refusal to grant the plaintiff's motion for partial summary judgment on the issue of Mr. Barr's breach of his fiduciary duty under the power of attorney.

Affirmed.

BROTHERTON, J., did not participate.

MILLER, Retired J., sitting by temporary assignment, deeming himself disqualified, did not participate in the consideration or decision of this case.

FOX and BERGER, JJ., sitting by temporary assignment.